**IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF OKLAHOMA**

| | | |
|---|---|---|
| REX DUNN and TRACIE DUNN, | ) | |
| | ) | |
| Plaintiffs, | ) | |
| | ) | |
| vs. | ) | NO. CIV-08-620-D |
| | ) | |
| | ) | |
| UNITED REGIONAL HEALTH CARE | ) | |
| SYSTEM, INC., and DAVID A. | ) | |
| FLACK, M. D., | ) | |
| | ) | |
| Defendants. | ) | |

**ORDER**

Before the Court are separate motions to dismiss for lack of personal jurisdiction filed by defendant United Regional Health Care System, Inc. ("United") [Doc. No. 6] and by defendant David A. Flack, M.D.("Dr. Flack") [Doc. No. 12]. Pursuant to Fed.R.Civ.P. 12(b)(2), each defendant argues that there are insufficient contacts with the forum state to permit the exercise of personal jurisdiction. Plaintiffs have filed a joint response to the two motions, and both are addressed herein.

I. Background:

Plaintiffs seek recovery of damages resulting from the alleged medical malpractice of the defendants in connection with treatment received by Mr. Dunn at United, a hospital located in Wichita Falls, Texas. More specifically, Plaintiffs allege that, following a 2003 injury occurring at a rodeo in Waurika, Oklahoma, Mr. Dunn received emergency medical treatment at United. As a result of his injuries, his left kidney was removed; Dr. Flack was the pathologist who examined the kidney following the surgery. Plaintiffs contend that the pathology report showed that the removed kidney was cancerous; however, Plaintiffs were not informed of that fact. Plaintiffs allege

that Dr. Flack negligently failed to properly evaluate the pathology report.  In 2007, Mr. Dunn had surgery at United to remove an abdominal mass and was diagnosed with renal cancer.  His condition is terminal.  Plaintiffs allege that, when the 2003 pathology report was examined in 2007, a different pathologist determined that the 2003 report revealed the existence of renal carcinoma. According to Plaintiffs, an accurate 2003 diagnosis would have allowed Mr. Dunn to begin medical treatment to prevent the cancer from advancing to the terminal stage.

Defendants' current motions do not address the factual allegations, but argue only that this court lacks personal jurisdiction over them.  United argues that it is a Texas corporation which does not have offices or employees in Oklahoma, does not regularly send its employees to Oklahoma, does not own real property, maintain a bank account, borrow money, or pay taxes in Oklahoma. Dr. Flack argues that he is a resident of Texas, where he is licensed to practice medicine, and that he maintains an office in Wichita Falls.  He further argues that he does not maintain an office, advertise, or conduct business in Oklahoma.

In response, Plaintiffs argue that, although located in Texas, United is a regional medical facility which serves a substantial number of patients in Oklahoma as well as in Texas.  Plaintiffs point out that United is located approximately 30 miles from their residence in Waurika and that residents of this area of Oklahoma regularly receive treatment there.  Plaintiffs argue that United advertises on Texas television stations which broadcast in southern Oklahoma.  According to Plaintiffs, those broadcasts and United's internet site are directed at Oklahoma as well as Texas.

II.  Personal jurisdiction standards:

It is well established that, to be subject to the personal jurisdiction of a court, a nonresident defendant  must have sufficient contacts with the forum state to satisfy the requirements of due

process. *World-Wide Volkswagen Corp. v. Woodson*, 444 U.S. 286, 291 (1980); *Peay v. BellSouth Med. Assistance Plan*, 205 F.3d 1206, 1209 (10th Cir. 2000). To establish the requisite minimum contacts, a plaintiff must show that the defendant has "purposefully availed itself of the privilege of conducting business in the jurisdiction of this court;" for this purpose, a defendant need not be physically present or have physical contacts with the forum so long as its efforts are purposefully directed there. *Burger King Corp. v. Rudzewicz,* 471 U.S. 462, 476 (1985). The minimum contacts standard met be satisfied in two ways. First, contacts may be satisfied by a showing that a defendant has purposefully directed its activities at residents of the forum and the litigation results from alleged injuries that "arise out of or relate to" those activities. *Id.* at 472. If so, the court has "specific" personal jurisdiction over the defendant. *Id.* Where a plaintiff's cause of action does not arise from the defendant's activities within the forum state, minimum contacts may be established by showing that the defendant had "continuous and systematic general business contacts in the state." *OMI Holdings, Inc. v. Royal Ins. Co. of Canada*, 149 F.3d 1086, 1091 (10th Cir. 1998). If so, the court has "general" jurisdiction over the defendant.

Where the Court does not hold an evidentiary hearing on a motion to dismiss for lack of personal jurisdiction, the plaintiff must only make a *prima facie* showing of personal jurisdiction by demonstrating, via affidavit or other written materials, facts that, if true, would support jurisdiction over the defendant. *See, e.g., AST Sports Science, Inc. v. CLF Distribution Limited,* 514 F. 3d 1054, 1057 (10th Cir. 2008); *Melea, Ltd. v. Jawer, SA*, 511 F. 3d 1060, 1065 (10th Cir. 2007). In the preliminary stages of litigation, a plaintiff's burden is "light." *Wenz v. Memery Crystal*, 55 F. 3d 1503, 1505 (10th Cir. 1995). Factual disputes at this initial stage must be resolved in the plaintiff's favor when the parties present conflicting affidavits. *Ten Mile Indus. Park v. Western*

*Plains Service Corp.*, 810 F.2d 1518, 1524 (10th Cir. 1987).

A district court must also consider whether personal jurisdiction is reasonable in light of the circumstances surrounding the case. *Bell Helicopter Textron, Inc. v. Heliqwest Intern., Ltd.,* 385 F. 3d 1291, 1296 (10th Cir. 2004) (citations omitted).  Courts consider the following factors to decide whether the exercise of jurisdiction is reasonable: (1) the burden on the defendant; (2) the forum state's interest in resolving the dispute; (3) the plaintiff's interest in receiving convenient and effective relief; (4) the interstate judicial system's interest in obtaining the most efficient resolution of controversies; and (5) the shared interest of the several states in furthering fundamental substantive policies. *Id.* (citations omitted).

III. Discussion:

A.  United:

Plaintiffs contend that, by advertising as a regional hospital and expressly directing information to Oklahoma regarding its medical services, United has purposefully directed its activities at the forum state and has continuous contacts here.  Plaintiffs argue that two of the three television stations serving Waurika are Texas stations and that United regularly advertises its services on those stations.  Affidavit of Mr. Dunn, Plaintiffs' Ex. 1 ¶XII.  Plaintiffs  also submit material from United's internet site, including a solicitation for donations to support programs and equipment purchases "necessary to touch and improve lives in north Texas and southern Oklahoma." Plaintiffs' Ex. 4.  Another item from its internet site reports that United has  partnered with Air Evac Lifeteam to provide helicopter transportation to United for patients in the regional area it serves, stating in part that  "[r]esidents in northern Texas and southern Oklahoma now have a better chance of surviving a serious illness or injury.  They can be flown to URHCS more quickly."  Plaintiffs'

Ex. 5. United does not dispute this evidence, but argues that it is insufficient to create the minimum contacts required for the exercise of personal jurisdiction.

The mere placement of advertisements in "nationally-distributed publications" cannot be regarded as "continuous and systematic" in nature. *Doering ex rel. Barrett v. Copper Mountain, Inc.* 259 F. 3d 1202, 1210 (10th Cir. 2001). However, advertisements directed at residents of a specific forum state may be sufficient to constitute minimum contacts with the state if the advertisements satisfy the "foreseeability that is critical to due process analysis" by evidencing conduct such that the defendant should "reasonably anticipate being haled into court" in Oklahoma. *World-Wide Volkswagen Corp. v. Woodson*, 444 U.S. 286, 295 (1980). Advertisements directed at, and soliciting the business of, residents of the forum state may be sufficient to satisfy due process, particularly if the resulting contacts are attributable to the defendant's actions rather than solely to the actions of the plaintiff. *See, e.g., Rambo v. American Southern Ins. Co.*, 839 F.2d 1415, 1421 n. 8 (10th Cir. 1988); *Fidelity and Cas. Co. of New York v. Philadelphia Resins Corp.*, 766 F.2d 440, 447 (10th Cir. 1985) (Although advertisement in a national publication is relevant to a personal jurisdiction issue, a national advertisement "is less important than it would have been had the advertisement been seen and acted upon" in the forum state.)

Advertisements appearing on an internet site may be sufficient to confer personal jurisdiction. *Soma Medical International v. Standard Chartered Bank*, 196 F. 3d 1292, 1296 (10th Cir. 1999). Maintenance of an internet site does not, however, always confer such jurisdiction; rather, the nature and degree of internet activity determines whether the contacts are sufficient to satisfy due process. *Id.* To determine whether the level of activity is sufficient, the court should apply a "sliding scale" evaluation to consider the nature of the internet activity conducted. *Soma*,

196 F. 3d at 1296. According to that scale, whether the exercise of jurisdiction is appropriate depends upon "the level of interactivity and commercial nature of the exchange of information that occurs on the Web site." *Id.* Thus, maintenance of a "passive" site which merely offers information, without more, is not sufficient to warrant the exercise of personal jurisdiction, while a site in which business is conducted, files are transmitted, or similar activity occurs is sufficient. *Soma*, 196 F. 3d at 1296. A "middle category" encompasses interactive sites "where a user can exchange information with the host computer." *Id.* at 1297.

In the context of litigation involving medical providers, the Tenth Circuit has recognized that "special rules have evolved to ensure that personal jurisdiction is asserted over a doctor only when she has purposefully availed herself of the privileges of conducting activities within her patient's state." *Kennedy v. Freeman*, 919 F.2d 126, 129 (10th Cir. 1990). Where the involvement is not the result of the physician's intent or effort to become involved with the forum state but is, instead, the result of the patient's own actions, jurisdiction has been found lacking. *Id.* (citations omitted). Where, however, the contact with the forum's resident results from the intentional solicitation of business in the forum, jurisdiction may properly be exercised. *Kennedy*, 919 F.2d at 129. Direct solicitation is not essential to the exercise of personal jurisdiction; instead, the question is whether the physician directed his activities to residents of the forum. *Id.* In such cases, the forum state "has a greater interest in deterring medical malpractice against its residents." *Kennedy*, 919 F.2d at 129 (citing *Lemke v. St. Margaret Hosp.*, 552 F. Supp. 833, 837 (N. D. Ill. 1982) and *McGee v. Riekhof*, 442 F. Supp. 1276, 1279 (D. Mont. 1978).

Other courts have applied these same rules to hospitals and medical facilities. *See, e.g., Cubbage v. Merchant*, 744 F.2d 665 (9th Cir. 1984). In *Cubbage*, a California resident filed a

6

California malpractice action against an Arizona hospital and physicians; the hospital was located in a small town near the border between the two states. 744 F.2d at 667. The Arizona hospital and the physicians advertised in the telephone directory for the California community in which the plaintiff resided. *Id.* at 668-69. Although the physicians were not licensed in California, they applied for and received "Medi-Cal" numbers which allowed them to receive reimbursement from California for services rendered to eligible California residents. 744 F.2d at 668. The Ninth Circuit found these contacts sufficient to show that the hospital and the physicians had purposefully directed activities into the forum state and that jurisdiction could thus be exercised. *Id.* at 672. Evaluating the reasonableness of exercising jurisdiction,[1] the Circuit considered the extent of the defendants' purposeful contact with California, the burden on them if the case proceeded in California rather than in Arizona, the respective states' interests in resolving the dispute, the forum state's interest in furthering its policies, and the most efficient forum to resolve the dispute. It concluded that the California federal court could properly exercise jurisdiction over the defendants. *Id.*

Other courts considering the contacts required to confer personal jurisdiction over hospitals have applied the same reasoning, and have found jurisdiction lacking. *See, e.g., Wolf v. Richmond County Hospital Authority*, 745 F.2d 904 (4th Cir. 1984). As the Tenth Circuit has observed, each case must be decided according to the facts presented and the nature of the specific contacts with the forum state. *See Hargrave v. Concord Moon, L. P.,* 278 Fed. Appx 853, 855 (10th Cir. 2008) (citing *Perkins v. Benguet Consol. Mining Co.*, 342 U.S. 437, 445 (1952).

In this case, United is a regional hospital which consistently advertises that it serves the residents of northern Texas and southern Oklahoma, an area including the community of Waurika.

---

[1] The Ninth Circuit applies the reasonableness analysis utilized by the Tenth Circuit in Bell Helicopter, supra. Cubbage, 744 F.2d at 670.

It holds itself out as providing medical care to residents of those areas, and maintains an emergency helicopter service designed to minimize the time required to reach its location. There is no evidence that Mr. Dunn solicited the medical care of United when he was injured in 2003; the evidence suggests that United was the hospital serving the location where he was injured and that it portrayed its services as extending to residents of southern Oklahoma, including Mr. Dunn.

United argues that personal jurisdiction cannot properly be exercised on the basis of its internet site because that site is passive, citing *Vanzandt v. Peden*, 2008 WL 1848298, at *3 (E.D. Okla. April 21, 2008), which held that participation in a website designed to solicit information from users and obtain assistance from Oklahoma officials is not sufficient to confer personal jurisdiction. In this case, however, United's web site is not limited to soliciting information or obtaining assistance. Instead, it expressly represents that the hospital serves residents of both Oklahoma and Texas; at a minimum, it directly offers its services to Oklahoma residents. In addition, Plaintiffs contend that United advertises on two television stations which are broadcast in southern Oklahoma and contain information similar to that of the internet site.

Considering all factors, the Court concludes that Plaintiffs have presented sufficient evidence to satisfy their limited *prima facie* burden at this stage of the litigation. Moreover, weighing the reasonableness of the exercise of jurisdiction, the Court concludes that it is not unreasonable to require United to submit to jurisdiction. Both Oklahoma and Texas have an interest in the subject matter of this litigation, and the Court finds no significant difference in those interests. The convenience of the forum to Plaintiffs and to United does not differ substantially, as neither is located close to this Court. While United argues that the evidence and witnesses are primarily located in Wichita Falls, Plaintiffs note that Mr. Dunn's current providers are in Oklahoma City.

In any event, the proximity of Wichita Falls to Oklahoma does not create an undue inconvenience on United. Furthermore, as the Circuit noted in *Kennedy*, a forum state "has a greater interest in deterring medical malpractice against its residents." 919 F.2d at 129.

The Court thus concludes that Plaintiffs have satisfied their burden of showing that personal jurisdiction may properly be exercised over United in this lawsuit. Accordingly, United's Motion [Doc. No. 6] is DENIED.

B. Dr. Flack:

In his Motion [Doc. No. 12], Dr. Flack asserts arguments similar to those raised by United. As discussed above, the rules applicable to out-of-state hospitals and physicians are essentially the same. However, the application of the "purposeful availment" rules may differ according to the specific facts involving Dr. Flack; Plaintiffs' burden is not necessarily satisfied simply because Dr. Flack is affiliated with United. Courts considering this question have reached differing conclusions, dependent on the particular facts of the physician's relationship with the hospital. *Compare Lemke v. St. Margaret Hospital*, 552 F. Supp. 833 ( N.D. Ill 1982) (exercise of jurisdiction over the physician was proper where the hospital solicited out-of-state patients, and the physician benefitted from that solicitation) and *Creech v. Oral Roberts*, 908 F.2d 75 (6${}^{th}$ Cir. 1990), *overruled on other grounds, Goldstein v. Christiansen*, 638 N.E. 2d 541, 545 n. 1(Ohio 1994)(jurisdiction over a physician could not properly be based only on the fact that he worked at a hospital over which the court had jurisdiction).

Because Plaintiffs' burden of establishing a *prima facie* showing of personal jurisdiction is very limited at this stage of the proceedings, the Court concludes that they have satisfied that showing with respect to Dr. Flack and that his Motion [Doc. No. 12] should be DENIED without

prejudice to the filing of a new motion after limited discovery. Such discovery may be conducted for a period of no more than 45 days from the date of this order. Following the completion of such discovery, Dr. Flack is authorized to renew his motion, if he has a good faith argument, based on the evidence and applicable law, that jurisdiction may not properly be exercised over him.

The Court file reflects that United also filed a Motion for a Protective Order [Doc. No. 16] in which it seeks to prevent Plaintiffs from conducting discovery with regard to the issue of personal jurisdiction. Inasmuch as the Court has concluded that it may properly exercise jurisdiction over United, the Motion [Doc. No. 16] is DENIED as moot.

IT IS SO ORDERED this  2nd  day of April, 2009.

_____
TIMOTHY D. DEGIUSTI
UNITED STATES DISTRICT JUDGE