# IN THE UNITED STATES DISTRICT COURT
# FOR THE WESTERN DISTRICT OF OKLAHOMA

| | |
|---|---|
| REX DUNN and TRACIE DUNN, | ) |
| | ) |
| Plaintiffs, | ) |
| | ) |
| vs. | ) NO. CIV-08-620-D |
| | ) |
| UNITED REGIONAL HEALTH CARE | ) |
| SYSTEM, INC., and DAVID A. | ) |
| FLACK, M. D., | ) |
| | ) |
| Defendants. | ) |

## ORDER

Before the Court is the renewed Motion to Dismiss [Doc. No. 45] filed by Defendant David A. Flack, M. D. ("Dr. Flack"). Pursuant to Fed. R. Civ. P. 12(b)(2), Dr. Flack argues that this action against him must be dismissed for lack of personal jurisdiction. Plaintiffs have timely responded to the motion, and Dr. Flack has filed a reply.

I. Background:

Plaintiffs seek recovery of damages resulting from the alleged medical malpractice of the defendants in connection with treatment received by Plaintiff Rex Dunn ("Mr. Dunn") at United Regional Health Care System, Inc. ("United"), a hospital in Wichita Falls, Texas. Plaintiffs allege that, following a 2003 injury in Waurika, Oklahoma, Mr. Dunn received emergency medical treatment at United; as a result of his injuries, his left kidney was removed. Dr. Flack was the pathologist who examined the kidney following the surgery. Plaintiffs allege the 2003 pathology report showed the removed kidney was cancerous; however, Dr. Flack and United negligently failed to diagnose renal cancer. In 2007, Mr. Dunn had surgery at United to remove an abdominal

mass; at that time, he was diagnosed with advanced renal cancer. His condition is terminal. According to Plaintiffs, if Dr. Flack and United had accurately examined the pathology report in 2003, they would have known the kidney was cancerous; had they done so, Plaintiffs contend Mr. Dunn could have obtained immediate medical treatment to prevent the cancer from advancing to the terminal stage.

In response to the Complaint, each defendant filed a motion to dismiss, arguing that personal jurisdiction is lacking because they have insufficient contacts with Oklahoma to permit the exercise of jurisdiction over them in this forum. In its April 2, 2009 Order [Doc. No. 31], the Court denied United's motion, finding that Plaintiffs had satisfied their burden of showing personal jurisdiction could be exercised over United. The Court also denied Dr. Flack's motion; however, because there was little evidence of his contacts with Oklahoma, the Court allowed the parties to conduct discovery limited to the issue of personal jurisdiction as it applies to Dr. Flack, directing that such discovery be completed within 45 days of the Order. The Court further stated that, following the completion of the limited discovery, Dr. Flack could renew his motion if he has a good faith argument that jurisdiction may not properly be exercised over him.

Dr. Flack has now renewed his motion, arguing that the evidence derived from his deposition establishes that he has not purposefully availed himself of the privilege of doing business in Oklahoma and lacks the minimum contacts required to permit the exercise of jurisdiction over him. Plaintiffs contend that the evidence reflects the existence of sufficient contacts with the forum.

II. Standards governing the exercise of personal jurisdiction:

It is well established that, to be subject to the personal jurisdiction of a court, a nonresident defendant must have sufficient contacts with the forum state to satisfy the requirements of due

process. *World-Wide Volkswagen Corp. v. Woodson*, 444 U.S. 286, 291 (1980); *Trujillo v. Williams*, 465 F. 3d 1210, 1219-20 (10th Cir. 2006); *Peay v. BellSouth Med. Assistance Plan*, 205 F.3d 1206, 1209 (10th Cir. 2000). The minimum contacts requirement may be satisfied in two ways. *Burger King Corp. v. Rudzewicz,* 471 U.S. 462, 476 (1985). First, a plaintiff may show that a defendant has purposefully directed its activities at residents of the forum state, and the litigation results from alleged injuries that "arise out of or relate to" those activities. *Id.* at 472. If so, the court has "specific" personal jurisdiction over the defendant. *Id.* Where a plaintiff's cause of action does not arise from the defendant's activities within the forum state, minimum contacts may be established by showing that the defendant had "continuous and systematic general business contacts in the state." *OMI Holdings, Inc. v. Royal Ins. Co. of Canada*, 149 F. 3d 1086, 1091 (10th Cir. 1998). If so, the court has "general" jurisdiction over the defendant. *Ten Mile Indus. Park v. Western Plains Serv. Corp.*, 810 F.2d 1518, 1524 (10th Cir. 1987).

"For general jurisdiction, the defendant's contacts with the state must be greater than those required for specific jurisdiction." *Doe v. National Medical Services*, 974 F.2d 143, 146 (10th Cir.1992). Courts "look to the defendant's general contacts with the state" to determine if there are "continuous and systematic general business contacts" so that "the defendant could reasonably anticipate being haled into court in that forum." *Id.* (citing *Helicopteros Nacionales De Columbia, S.A. v. Hall*, 466 U.S. 408, 415 (1984) and *Burger King*, 471 U.S. at 474).

As explained in the April 4, 2009 Order, the Tenth Circuit has acknowledged that the exercise of personal jurisdiction over a physician requires a specific analysis; thus, "special rules have evolved to ensure that personal jurisdiction is asserted over a doctor only when she has purposefully availed herself of the privileges of conducting activities within her patient's state."

3

*Kennedy v. Freeman*, 919 F.2d 126, 129 (10th Cir. 1990). For example, where the contact with the forum's resident results from the intentional solicitation of business in the forum state, jurisdiction may properly be exercised. *Id.* In contrast, where the involvement is not the result of the physician's effort to become involved with the forum state but is, instead, the result of the patient's own actions, jurisdiction has been found lacking. *Kennedy*, 919 F.2d at 129 (citations omitted). Purposeful availment does not, however, require direct solicitation of patients by the physician; instead, the question is whether the physician has directed his activities to residents of the forum. *Id.* If so, the forum state "has a greater interest in deterring medical malpractice against its residents." *Kennedy*, 919 F.2d at 129.

In *Kennedy*, an Oklahoma resident was treated by her Oklahoma physician, who removed a skin lesion and sent it to a Texas physician for analysis and measurement. The Texas physician, who had no Oklahoma office or medical license and did not advertise in Oklahoma, accepted the sample and performed the analysis and measurement; he returned his report to Oklahoma. Based on his analysis, the patient was not given follow-up treatment. The measurement was later found to be inaccurate and, four years later, the Oklahoma patient's malignant melanoma had spread throughout her body. She sued in Oklahoma federal court, alleging negligence and malpractice by the Texas physician. *Kennedy*, 919 F.2d at 127.

The trial court granted the Texas physician's motion to dismiss, concluding that jurisdiction could not be exercised over him because he did not directly solicit business in Oklahoma; the Tenth Circuit reversed that decision. *Id.* at 129. Although general jurisdiction was lacking because the physician did not have systematic or continuous contacts in Oklahoma, the Circuit held that specific jurisdiction existed. Although the physician did not solicit business in Oklahoma, the Circuit held

4

that direct solicitation is not required. "Whether a 'party solicited the business interface is irrelevant, so long as defendant then directed its activities to the forum resident.'" *Kennedy*, 919 F.2d at 129 (quoting *Lanier v. American Bd. of Endodontics*, 843 F.2d 901, 910 (6th Cir. 1988), *cert. denied,* 488 U. S. 926 (1988)). Applying that rule to the facts in *Kennedy*, the Circuit held that the Texas physician had purposely directed his activities to Oklahoma by willingly accepting the Oklahoma patient's sample, performing an analysis of that sample, signing a report, and returning the diagnosis to Oklahoma with knowledge that the report was extremely significant and would be the basis of her further treatment in Oklahoma. *Id.*

The Tenth Circuit has also acknowledged that the minimum contacts analysis differs according to the facts of each case. Whether sufficient contacts exist must be determined by the facts presented and the nature of the defendant's specific contacts with the forum state. *See Hargrave v. Concord Moon, L. P.,* 278 F. App'x 853, 855 (10th Cir. 2008) (citing *Perkins v. Benguet Consol. Mining Co.*, 342 U.S. 437, 445 (1952)).

III. Application:

In this case, Plaintiffs argue that the evidence shows this Court has general or specific jurisdiction over Dr. Flack. They contend that Dr. Flack has maintained an Oklahoma medical license for over 20 years, and doing so is sufficient to confer general jurisdiction. Plaintiffs argue that, if general jurisdiction is lacking, the Court has specific jurisdiction over him because the majority of Dr. Flack's pathology work was performed at or on behalf of United, which actively solicited Oklahoma patients, and Dr. Flack was aware that United treated Oklahomans. Plaintiffs rely on Dr. Flack's deposition testimony to support these contentions; Dr. Flack argues that his testimony shows that neither general nor specific jurisdiction may be exercised over him.

5

Dr. Flack's deposition establishes that he is a Texas native whose only medical office is located in Wichita Falls, Texas, where he also maintains his personal residence. Dr. Flack deposition ("Flack dep."), submitted as Exhibit C to Motion, p. 5, lines 16-18. He attended medical school in Texas, completed his residency there, and then established the medical office he has maintained in Wichita Falls for over 20 years. *Id.*, p. 6-7; p. 38, lines 8-25; p. 39, lines1-4; p. 48, lines 8-13. His medical practice, Pathology Associates of Wichita Falls, is the only office with which he has been affiliated since completing medical school. He has never had an office or employees in Oklahoma, nor does he advertise in Oklahoma. Flack dep., p. 58, lines 9-19. Dr. Flack and Pathology Associates do not own real or personal property located in Oklahoma, do not maintain Oklahoma telephone listings, and do not pay taxes in Oklahoma. *Id.*

Pathology Associates maintains its own offices and laboratory where it performs pathology services for physicians and hospitals. Flack dep., pp. 15-16. Pathology Associates has never solicited business from, or directed marketing or advertising to, Oklahoma physicians, medical facilities, or residents. *Id.,* p. 58. Pathology Associates has never had a contract or business arrangement with Oklahoma physicians or medical facilities, and its laboratory services are not used by Oklahoma medical providers. Flack dep., p. 39-40.

Dr. Flack is licensed to practice medicine in Oklahoma; although he has maintained an Oklahoma medical license for over 20 years, he has never practiced in Oklahoma and does not intend to do so. *Id.*, p. 40, lines 17-25; p. 41, lines 1- 4. Dr. Flack and Pathology Associates do not have an Oklahoma Medicaid provider payee number, although they maintain one for Texas. Flack dep., p. 45, lines 22-25; p. 46, lines 19-25; p. 47, lines 1-3.

Dr. Flack testified that Pathology Associates has a contractual arrangement with United to

provide pathology services for hospital patients. Under the terms of the contract, Pathology Associates and its individual members, including Dr. Flack, are not United employees; they are independent contractors. When work is performed for United, Pathology Associates personnel typically utilize the hospital's laboratory facilities and equipment. Flack dep., p. 25, lines 16-25; p. 26, lines 1-21. Staff assistance is provided by United. Pathology Associates is compensated by United for the work performed by its physicians at United. Flack dep., p. 36. Dr. Flack is not directly paid by United for his services; his compensation is received from Pathology Associates. *Id.* According to Dr. Flack, over 90 per cent of his pathology work is performed at United rather than in the laboratory at Pathology Associates. Flack dep., p. 23, lines 23-25; p. 24, lines 1-23.

Dr. Flack testified that, when specimens are submitted by United to Pathology Associates for laboratory work, the patient information provided is typically limited to name, gender, date of birth, and a clinical impression explaining why the specimen is being submitted to the laboratory. Flack dep., p. 42, lines 17-25. The patient's address or state of residence is not included. *Id.*, p. 43, lines 1-10. Pathology Associates' contract with United requires that it perform requested analyses without regard to the state of residence of the specific patient involved. Flack dep., p. 17, lines 11-15.

Dr. Flack is aware that United advertises on local television stations, and he has seen the advertisements. *Id.,* p. 55, lines 12-24. He is also aware that some of the television stations are broadcast into Oklahoma. Flack dep., p. 56, lines 1-3. He does not know whether Mr. Dunn saw the advertisements or whether they had anything to do with Mr. Dunn's choice of United as a hospital in 2003. *Id.*, lines 4-9. Although Dr. Flack knows United has a website, he is not very familiar with its contents; he does not recall being aware, in 2003, that the website mentioned that

7

United served Oklahoma residents. Flack dep., p. 56, lines 10-25; p. 57, lines 1-4.

According to Dr. Flack, the 2003 pathology work following Mr. Dunn's surgery was performed at United in its laboratory. Prior to examining the specimen provided to him by United, Dr. Flack had no contact with Mr. Dunn. Flack dep., p. 25. Dr. Flack never met Mr. Dunn, and did not know where he resided. He did not receive any communication from Oklahoma physicians regarding Mr. Dunn, nor did he initiate communications with Oklahoma physicians regarding Mr. Dunn or his 2003 post-surgery treatment. *Id.*, lines 6-16.

Contrary to Plaintiffs' argument, the evidence before the Court is insufficient to establish general jurisdiction over Dr. Flack. The only evidence on which Plaintiffs rely in support of this contention is the fact that Dr. Flack has maintained an Oklahoma medical license for over 20 years. Plaintiffs offer no authority to support the contention that maintaining a license in a state, without more, is sufficient to confer general personal jurisdiction.

Although the Tenth Circuit has apparently not considered this question, courts doing so have held that maintenance of a license to do business in the forum state, without more, is not sufficient to confer general jurisdiction. *See Metropolitan Life Ins. Co. v. Robertson-Ceco Corp.*, 84 F.3d 560, 570 (2d Cir. 1996) (citing *Sandstrom v. ChemLawn Corp.*, 904 F.2d 83, 89 (1st Cir.1990))*; Wilson v. Humphreys (Cayman), Ltd.*, 916 F.2d 1239, 1245 (7th Cir. 1990) (registration to conduct business in a state, without more, was insufficient to support general personal jurisdiction); *Drake v. Laboratory Corp. of America Holdings,* 2008 WL 4239844, at *6 (E. D. N. Y. Sept. 11, 2008). More specifically, the fact that a defendant has a medical license in the forum state has been held insufficient, without more, to confer jurisdiction. *Good v. Presbyterian Hosp. in New York*, 1993 WL 131451, at*5 (E. D. Pa. April 27, 1993) (unpublished opinion)(physician who was licensed in

Pennsylvania, owned residential property there, and had previously practiced there did not have continuous and systematic contacts with Pennsylvania because she had not practiced in the state for approximately five years prior to the incident at issue). At least one court has held that "it is the actual practice of a profession...and not the possession of the right to practice that brings a person within the jurisdiction" of the forum state. *Ghanem v. Kay*, 624 F. Supp. 23, 25 (D. D. C. 1984).

In this case, although Dr. Flack has maintained an Oklahoma medical license, the evidence establishes that he has never practiced medicine in Oklahoma; his practice has been continually confined to Wichita Falls, Texas. There is no evidence before the Court to show that Dr. Flack has maintained the "continuous and systematic general business contacts" in Oklahoma required to confer general personal jurisdiction over him in this Court. *See OMI Holdings*, 149 F. 3d at 1091.

Plaintiffs contend, however, that the evidence also establishes specific personal jurisdiction because Dr. Flack purposely directed his activities into Oklahoma by knowingly providing medical treatment to Oklahoma residents. As Plaintiffs point out, the evidence shows that more than 90 percent of his work was performed at United for its patients, and Dr. Flack was aware that those patients included Oklahoma residents.

Plaintiffs rely on the Tenth Circuit's decision in *Kennedy* as presenting facts similar to those in this case, and argue that the decision supports specific jurisdiction. Dr. Flack argues that the evidence suggests Mr. Dunn sought treatment in Texas, a factor which weighs against a finding of specific personal jurisdiction.[1] *See Kennedy*, 919 F.2d at 129. Dr. Flack also cites decisions in which a physician's unsolicited referral or treatment of a patient was held insufficient to establish

---

[1] The limited evidence in the record suggests that, because Mr. Dunn was injured in an accident, he received emergency care at United, which was the closest medical facility at the time. Based on the current record, the Court cannot conclude with certainty that he specifically selected United.

personal jurisdiction.

The cases cited by both Plaintiffs and Dr. Flack underscore the Tenth Circuit's view in *Hargrave, supra,* that the determination of specific personal jurisdiction is a factual one and the outcome varies according to the circumstances. The Court must follow the general rules established by the Tenth Circuit in evaluating the circumstances presented in this case. In *Kennedy*, the Circuit rejected Dr. Flack's argument that personal jurisdiction is lacking because he did not actively solicit Mr. Dunn or any other Oklahoma resident as a patient. *Kennedy,* 919 F. 2d at 129. Instead, the question is whether, in analyzing and diagnosing Mr. Dunn's kidney specimen, Dr. Flack purposely directed his medical activities to a resident of Oklahoma. *Id.*

The evidence establishes that Dr. Flack knew that some of the work he performed at United involved Oklahoma patients; he was aware that the hospital served Oklahomans, and more than 90 percent of his work was performed at the hospital for its patients. He certainly was aware, by the nature of his work as a pathologist, that his analysis and diagnosis would have an impact on an Oklahoma patient's treatment and care after release from the hospital and that patients would return to their homes for post operative care. The evidence shows that he did not know where Mr. Dunn resided, and that fact was not important to the performance of his pathology services. The evidence further shows that Pathology Associates billed patients directly for its services, including those of Dr. Flack. Accordingly, the bill for services rendered to Mr. Dunn would have been sent to Oklahoma. Pathology Associates and Dr. Flack thus benefitted from the services rendered to Oklahoma residents treated at United, including Mr. Dunn.

The Court concludes that, following the analysis of *Kennedy*, the evidence is sufficient to show that Dr. Flack has sufficient contacts with Oklahoma to permit this Court's exercise of

personal jurisdiction over him.

That conclusion does not, however, end the inquiry, as the Court must also consider whether personal jurisdiction is reasonable in light of the circumstances surrounding the case. *Bell Helicopter Textron, Inc. v. Heliqwest Intern., Ltd.,* 385 F. 3d 1291, 1296 (10th Cir. 2004) (citations omitted). That determination requires consideration of the following factors: (1) the burden on the defendant in appearing in the forum; (2) the forum state's interest in resolving the dispute; (3) the plaintiffs' interest in receiving convenient and effective relief; (4) the interstate judicial system's interest in obtaining the most efficient resolution of controversies; and (5) the shared interest of the several states in furthering fundamental substantive policies. *Id.* (citations omitted).

The evidence establishes that, although Dr. Flack may be inconvenienced by a required appearance in this Court, that inconvenience does not present a significant burden. He resides in Wichita Falls, Texas, which is located close to the Oklahoma border; Plaintiffs' residence in Waurika is only a few miles closer to Oklahoma City. Thus, this forum is not particularly convenient for any of the parties. Apparently, the parties have conducted discovery in Wichita Falls, where both United and Dr. Flack are located; thus, it appears no undue burden will result from continued discovery under the direction of this Court. The Court concludes that Dr. Flack will not be unduly burdened by defending Plaintiffs' claims in this forum.

With respect to the forum state's interest in resolving the dispute, Oklahoma has an interest in resolving medical malpractice claims which allegedly result in harm to its residents. As the Circuit noted in *Kennedy*, a state has a great interest in deterring medical malpractice against its residents. *Kennedy*, 919 F.2d at 129-30.

The third factor, the plaintiffs' interest in achieving convenient and effective relief, also

weighs in favor of maintaining suit in this forum. Plaintiffs chose to bring their action in this Court, and the Court will not disturb that choice absent a compelling reason. If Plaintiffs were required to file a separate suit against Dr. Flack in a Texas forum, the resolution of the dispute would necessarily be delayed, and they would be burdened by the requirement of conducting litigation in two separate forums.

The final factors involve the judicial system's interest in obtaining the most efficient resolution of controversies and the shared interest of the several states in furthering fundamental substantive policies. The Court finds that both interests are satisfied by continuing this action against Dr. Flack in this forum. Requiring the action to proceed against Dr. Flack in another forum would be inefficient, as the action will proceed against United in this Court. Based on the limited evidence currently in the record, it appears that separate lawsuits would result in duplicative discovery, as well as presentation of evidence at separate trials. To the extent the same witnesses would be involved in both proceedings, they would also be inconvenienced. Certainly, the costs to all parties would be increased. Finally, the substantive policies of Oklahoma and Texas regarding medical malpractice claims are not adversely impacted.

Dr. Flack can defeat otherwise proper jurisdiction only by presenting "'a compelling case that the presence of some other considerations would render jurisdiction unreasonable.'" *Kennedy*, 919 F.2d at 129 (quoting *Burger King*, 471 U.S. at 477). Having examined the factors relevant to this determination, the Court concludes that Dr. Flack has not made such a showing.

IV. Conclusion:

For the foregoing reasons, Dr. Flack's Motion [Doc. No. 45] is DENIED. This action will

proceed accordingly.

       IT IS SO ORDERED this   2nd    day of December, 2009.

                                                                TIMOTHY D. DeGIUSTI
                                                                UNITED STATES DISTRICT JUDGE